OPINION OF THE COURT
James B. Reap, J.
A. FACTS
1. The defendant was charged by an officer of the White Plains Police Department in an accusatory instrument dated May 25, 1979 with:
a. Committing the crime of menacing, a violation of section 120.15 of the Penal Law as a class B misdemeanor, and
b. Committing disorderly conduct, a violation of subdivision 7 of section 240.20 of the Penal Law.
2. Defendant was arraigned on those charges on May 29, 1979 and the cases were adjourned to afford him an opportunity to consult with counsel, which he did. Thereafter, conversations and "negotiations” between the District Attorney and the defendant’s attorney took place.
3. On June 12, 1979, the defendant with the consent of the People and his own attorney, was granted an adjournment in contemplation of dismissal (hereinafter referred to as an ACD) pursuant to CPL 170.55, as to all of these charges. In the presence of and with the advise of counsel, he duly executed the first half of a two-part affidavit waiver in the form required by the Westchester County District Attorney. The *1059 waiver specifically covered all the privileges otherwise afforded by CPL 160.50 and the right to bring a civil action against the complaining law enforcement officer and members of any law enforcement agency. The period of time for the ACD to run was six months to expire on December 12, 1979. The court, as has long been customary here, accepted the affidavit waiver and imposed as additional conditions to its acquiescence in this disposition, that the defendant not be convicted of any crime during the six-month period.
4. The period of time duly ran, the defendant had no involvement with the law, and effective December 7, 1979, in the presence of counsel, he duly executed the second half of the two-part waiver affidavit also in the form required by the Westchester County District Attorney. Here again, this portion of the waiver covered the identical privileges otherwise afforded by CPL 160.50 and the right to bring a civil action against the complaining law enforcement officers and members of any law enforcement agency. Up to this point everything is normal, it looks like the case is fully closed and therefore, in accordance with the provisions of CPL 170.55 (subd 2), the charges are dismissed retroactive to their initiation in the accusatory instrument on May 25, 1979. Not so!
5. On April 14, 1980 or more than four months after the second half of the waiver was executed on December 7, 1979, the defendant by the same attorney who has always represented him throughout these proceedings, moved pursuant to CPL 160.50 for an order returning his fingerprints and photographs, and for a sealing of the record in his case upon the ground that said statute specifically entitles him to that relief where, as here, he was granted an ACD pursuant to CPL 170.55.
6. What we have here is a competent adult defendant moving to void the consequences of not one but two wholly separate and complete duly executed, notarized and acknowledged waiver agreements which were signed by him on widely separate dates. There is and can be no question whatsoever that the meaning and contents of the waivers were made very clear to him twice, both per se and through the informed counsel of a learned, competent and experienced practitioner at the Bar, Harris L. Kimball, Esq.
7. The motion, inclusive of a very thorough memorandum of law, was returnable in this court on May 20, 1980; the People duly replied by their affirmation dated May 22, 1980; and the *1060 defendant submitted a reply affidavit on June 2, 1980. The matter is now fully submitted and ready for decision.
8. We deem it unnecessary to set forth the relevant sections of the law because they are well known to all attorneys and Judges and they are incorporated herein by reference.
B. POLICY BACKGROUND
Wholly unlike the facts in People v Siragusa (81 Misc 2d 368), it is the policy of the District Attorney of Westchester County in the ñrst instance, not to consent to an ACD under CPL 170.55 unless and until a defendant agrees to execute a waiver of his rights to relief under CPL 160.50 and also his right to bring a civil action against any . appropriate complainants and law enforcement officers/agencies. This policy is based at least in part on the following rationale: The District Attorney is reluctant to consent to an ACD for any individual who has previously been granted one. An ACD sounds in the nature of extraordinary relief because the bottom line in fact is that the charges are dismissed retroactively if a defendant fully qualifies. (Of course, even if the People will not consent to an ACD, the court still has many judicial tools available for mitigation where a "second offender” warrants lenient treatment such as a dismissal in the interest of justice, youthful offender dispositions, and involvement in plea bargaining from a crime down to a violation.) How then, are the People to know whether or not a person has previously received an ACD so as to make a decision on extending the benefits of the provisions of CPL 170.55 to such defendant? The most reliable manner to determine whether the applicant for the ACD is in fact a first offender is to make a fingerprint check. If the fingerprints were not kept on file there would be nothing to check against. Thus, the fundamental reason why the District Attorney, at least in Westchester County, requires the waiver affidavits now under attack is to assure that the best evidence to check against is preserved inviolate.
C. QUESTION POSED, ANSWER AND DECISION
The question squarely raised on this motion is whether or not such a waiver requirement policy is lawful.
We answer the question in the affirmative for the purpose of this particular case, and the motion is denied and dismissed.
*1061 D. DISCUSSION AND REASONING
1. We do not enthusiastically approve the procedures here involved but believe they may be permitted and are enforceable in certain circumstances. Agreements such as these waivers contain, which relinquish fundamental statutory rights— return of prints and photographs per CPL 160.50 — and constitutional rights — to bring a civil action for false arrest or false imprisonment, etc., and thus petition for a redress of grievances under the First Amendment of the United States Constitution— must be scrutinized with utmost care to determine whether the defendant’s consent was freely and voluntarily given.
2. We hold that where the execution of the affidavit waivers in question is conscious, voluntary, and informed, where one fully understands the legal ramifications thereof and most especially, where the decision to execute the waivers on two separate occasions was with the advise and consent of counsel, then such waivers are and should be fully binding and defendant will be held to his agreement.
While it is obvious the best practice would be for the People or the court to conduct a voir dire and spread the facts on the record to assure all concerned that each defendant is clearly knowledgeable of the legal effect and the meaning and contents of these waivers before they are executed, we hold that is not a sine qua non to their enforcement.
3. It is fundamental in law that even before there is an accusatory instrument laid before the court, the District Attorney must be satisfied that there is a legal basis for the charges and the defendants are made to know this upon arraignment by the court. They also are advised that the People have the burden of proof to sustain said charges beyond a reasonable doubt.
4. It is equally axiomatic that before there can be an ACD at all, the People must consent. The Legislature has so stated. (CPL 170.55, subd 1.) If the prosecutor does not consent there is no ACD. (See People v Stern, 83 Misc 2d 935.) The court has no discretion to act in the ACD area absent such consent.
5. Finally, it is of importance to note that CPL 170.55 (subd 2) specifically states that if the People move to reopen the case within six months after the issuance of the initial order granting the ACD, the court must restore the case to the calendar and the action must proceed. Once again, the Legis *1062 lature gives the court no discretion. Reopening and restoration on the People’s application is mandatory. It is questionable whether the People even have to give a reason for their motion to restore the original case to the calendar. In any event, it is the Legislature itself which has provided the District Attorney with a unilateral sword of Damocles to hold over a defendant’s head should he or she transgress or breach the specific conditions of the consent agreement embodied in the waiver forms.
It is irrelevant to this discussion that effective September 1, 1980, CPL 170.55 as amended (L 1980, ch 24) will no longer mandate restoration of the case merely upon application of the People but that restoration shall become discretionary with the court upon a determination that confirmation of the ACD would not be in the interests of justice.
6. In summary, what the statute provides for in essence is, an abatement of prosecution for a defined probationary period since the case is dismissed if the People do not reopen the same within six months. It is clear that the Legislature and not the District Attorney, as defendant alleges, made the law. Our elected representatives gave him the sole power to consent to an ACD and the sole power to reopen the grant of an ACD.
7. It does not really require any citation of authority but only an exercise in logic to reach the result we do for obviously if the prosecutor does not consent there is no ACD. We realize that if the defendant does not execute the affidavit waivers there is also no ACD but we do not find this an impermissible Hobson’s choice or "Catch-22” situation because common sense dictates that the whole is equal to the sum of its parts. Thus, if the prosecutor can withhold his initial consent altogether he can also reasonably put limitations or conditions on said consent provided he does so the ñrst time the parties agree to the ACD procedures and the defendant executes the form affidavit. We find all of the conditions at issue here to be reasonable and to have been fully disclosed to the defendant, and acquiesced in by him voluntarily and knowledgeably.
8. It is also very interesting to note what could have occurred if either the People had not consented or the defendant utterly refused to the conditions imposed by the People. What happens next is prosecution as charged. Defendant did not have to accept the terms offered by the District Attorney. *1063 They were optional with him and as a matter of right he could have pleaded not guilty and demanded a trial.
However, in this case, if convicted he would have faced a maximum punishment of a $500 fine and/or 90 days in the Westchester County Penitentiary as to the charge of violating section 120.15 of the Penal Law (menacing) as a class B misdemeanor and an additional separate maximum punishment of a $250 fine and/or 15 days in the said penitentiary as to subdivision 7 of section 240.20 of the Penal Law (disorderly conduct) as a violation.
Defendant’s exposure in toto, therefore, was $750 and 105 days in prison if the terms were imposed consecutively and not concurrently. Defendant and his attorney knew all that!
By acquiescing in all the conditions imposed by the People in their ACD affidavit form, defendant waived his right to trial and avoided exposure to both a substantial monetary fine and substantial loss of liberty. He, therefore, obtained much quid for the quo and had a full opportunity to weigh the hazards of trial against the merits of the ACD as offered. We fail to see any such element of coercion or duress involved in the District Attorney’s procedures which would shock the conscience of the court particularly when full consideration is given to the benefits conferred upon this defendant. On the contrary, we are satisfied beyond a reasonable doubt no pressure at all was placed upon the defendant to agree to the noncriminal alternatives of CPL 170.55 and no overwhelming inducement was imposed to surrender his right to trial.
E. THE LAW AND AUTHORITIES
1. This is apparently a case of first impression in New York State so far as officially reported decisions are concerned. We have been unable to find any authority directly in point except for our own decision made in this court on August 14, 1978 in the matter of People v Streisfeld. In that case, we approved the District Attorney’s waiver procedures. The defendant took a CPLR article 78 review of our determination to the Supreme Court and on November 28, 1978 the Honorable William A. Walsh, Jr., sustained our determination and dismissed the proceeding. That decision was in turn appealed to the Appellate Division and a unanimous four-Judge court sustained both Justice Walsh and us. (See Matter of Streisfeld v Vergari, 69 AD2d 864.) Nevertheless, it must be noted that the appellate determination was on the narrow ground that *1064 an article 78 writ of prohibition did not lie in the case at all because there could be no question as a matter of law that the White Plains City Court had the power and jurisdiction to act. Thus, the merits on the propriety of the Westchester County District Attorney imposing alleged improper conditions on his consent to a CPL 170.55 ACD were not reached. It is noted, however, that the Appellate Division specifically distinguished People v Siragusa (81 Misc 2d 368, supra, affd sub nom. Siragusa v Cahn, 45 AD2d 991, lv to opp den 35 NY2d 646) and held it altogether different from Streisfeld. We also distinguish that case from the facts at bar and hold it inapplicable for reasons more fully explained below.
2. One other case of interest is involved and that is Matter of Herold v Vergari (61 AD2d 796) which also involved a CPLR article 78 proceeding and which raised the same question of abuse of discretion by the District Attorney as to a refusal to consent to an ACD. The Appellate Division again sustained a determination by Mr. Justice Walsh dated July 19, 1977 which dismissed that proceeding because the petitioner was the attorney for the defendant, and not the aggrieved party. Nevertheless, while the merits were again not reached, it is important to note that there a unanimous four-judge court specifically said (supra, p 796), "Were we not ordering the dismissal of this appeal, we would affirm the judgment under review”. It is unusual for appellate courts to make such strong statements when they are not essential to a determination but such statements should and do carry persuasive weight for our guidance. The message is clear: a refusal to grant consent to an ACD would be affirmed; therefore, a refusal to grant consent except upon specified conditions (provided the conditions were legal) would be affirmed.
3. The courts of this State have repeatedly held that there is no constitutional or statutory right to a preliminary hearing as a condition precedent to a valid indictment. (People v Tornetto, 16 NY2d 902; People ex rel. Hirschberg v Close, 1 NY2d 258; People v McDonnell, 83 Misc 2d 907.)
Likewise, there is no constitutionally protected right to have one’s case adjourned in contemplation of dismissal under CPL 170.55. Eligibility for an ACD is not a vested right as it is always conditioned upon a consent by the People and at least one of the indicia of consent is and ought to be the defendant’s presentation of facts supportive of a contention that a further prosecution might result in substantial injustice. It has been *1065 held improper for a court sua sponte to impose the waiver by a defendant of his right to sue for civil relief as a condition to its own granting of a motion to dismiss in the interests of justice per CPL 170.40 (Dziuma v Korvettes, Div. of Arlen Realty & Dev. Corp., 61 AD2d 677.) That case however did not involve an ACD application under CPL 170.55. Also, in the instant Chen case, it was the People and not the court which imposed the condition regarding civil relief and, in addition, the defendant acquiesced therein. Here it was only after the parties agreed that the court approved.
Moreover, the thrust of the motion before us is only to retrieve defendant’s prints and photographs; not to lay the foundation for a civil suit. Mention by defendant of the loss of the civil right to sue is only a bootstrap argument here and we need not decide the motion on that point. It is severable in any event, and assuming but not admitting it is improper and repugnant for the People to demand that provision in their form waiver, it is hardly enough to vitiate the form in its entirety. (People v Siragusa, 81 Misc 2d 368, 373, supra; People v Wilmot, 104 Misc 2d 412.)
4. It must always be remembered that when a defendant is considering whether or not to accept an ACD on the People’s terms, the decision to accept is analogous to informed plea bargaining. The District Attorney’s consent is not automatically granted. On the contrary, it is negotiated and the terms of the negotiated agreements are made voluntarily and at arm’s length. These waivers are contracts between the People and the defendant represented by counsel, and since there is valuable consideration on both sides they should be enforced like any other contract. Furthermore, we believe it logical to conclude that if a defendant can waive constitutional rights such as to be represented by counsel, to be tried by a jury of one’s peers, to confront one’s accusers, to present witnesses in one’s defense, to remain silent, to be convicted by proof beyond a reasonable doubt, the presumption of innocence, etc., then surely he can also waive statutory rights such as those conferred by CPL 160.50. Compare by analogy People v Esajerre (35 NY2d 463).
An ACD is merely another category of transaction commonly referred to as plea bargaining. (People v Siragusa, supra.) Plea bargaining flows from the mutuality of advantage to defendants and prosecutors, each with his own reasons for *1066 wanting to avoid trial. (Brady v United States, 397 US 742.) In essence, the form requires that the defendant waive his right to a return of fingerprints. A return of fingerprints is a statutory right and not a constitutional right. (Kushner v De La Rosa, 72 Misc 2d 319.) Therefore, the People are requiring the defendant to waive a statutory right during the course of plea bargaining. (People v McDonnell, 83 Misc 2d 907, supra.) In return for the waiver of a statutory right, the People are consenting to a grant of an ACD.
6. If the system of plea bargaining is to work effectively, prosecutors must be accorded the widest discretion, within constitutional limits, in conducting bargaining. Since the prosecutor has discretion as to whether or not to consent to an ACD application and since the granting of an ACD is not a statutory or constitutional right, the People are giving up something of considerable value in the plea bargaining process. The defendant in order to balance the scales, is consenting to a waiver of his statutory right to a return of fingerprints. This procedure is not a denial of defendant’s constitutional rights, because he is not coerced into accepting the "plea bargain”. Rather, he is giving up something in order to have his case adjourned in contemplation of dismissal.
7. The question of whether a defendant can waive certain rights has been answered in the positive by our highest courts. It has long been accepted that a defendant cannot only waive his statutory rights, but even his constitutional rights: right to a trial, right to a trial by jury, right to confront his accusers, right to compulsory process, right to counsel, right against self incrimination. All that is required is that the waiver be knowingly and intelligently made. (Barker v Wingo, 407 US 514; Johnson v Zerbst, 304 US 458.) In order to waive a constitutional right, the defendant must be fully cognizant of the consequences of his agreement to the plea condition. (People v White, 32 NY2d 393.)
8. Even though all statutory rights can be waived upon the proper circumstances, it has been held that only one constitutional right cannot be waived, the right to a speedy trial. In People v Blakely (34 NY2d 311), it was held that a prosecutor may not condition an offer to recommend a reduced plea upon a defendant’s withdrawal of his claim that his right to a speedy trial has been violated, because such condition is inherently coercive. Blakely is not dispositive of the issue of waiver because: "The right to a speedy trial is genetically *1067 different from any of the other rights enshrined in the Constitution for the protection of the accused.” (Barker v Wingo, 407 US 514, 519, supra.)
9. It seems to be a well-settled rule that a defendant who is represented by counsel, who is fully aware of the right that he is forsaking, who is fully aware of the consequences of forsaking that right, and who is unhurried in his decision, can waive statutory as well as constitutional rights during the course of plea bargaining. In People v Esajerre (35 NY2d 463, supra) the question presented to the Court of Appeals was whether a defendant can waive a determination of his suppression motion as a condition to a reduced plea. The court answered in the positive stating that it was a proper waiver considering the defendant’s position during plea bargaining.
10. In People v La Ruffa (34 NY2d 242), the Court of Appeals held that a plea of guilty, entered knowingly and intelligently, constitutes a waiver of the right not to be twice subjected to the risk of punishment for the same offense. It is clear that a plea of guilty negotiated during plea bargaining waives such fundamental constitutional rights as the privilege against compulsory self incrimination guaranteed by the Fifth Amendment (Boykin v Alabama, 395 US 238), and the right to a trial by jury as guaranteed by the Sixth Amendment. (McCarthy v United States, 394 US 459.) Since constitutional rights can be waived during plea bargaining, it is apparent that statutory rights can be waived during the course of plea bargaining. (People v Tornetto, 16 NY2d 902, supra [waiver of the right to a preliminary hearing]; People v Williams, 36 NY2d 829 [waiver of right to appeal].)
11. As long as the defendant is represented by counsel and makes an intelligent and knowing waiver of a statutory right, there can be no constitutional attack upon this waiver unless the defendant was coerced into making the waiver. The issue of coercion during plea bargaining has been decided repeatedly by the Supreme Court of the United States. One case which has an important impact on the process of plea bargaining was decided by the Supreme Court in Bordenkircher v Hayes (434 US 357). In that case, the Supreme Court held that when a State prosecutor carried out a threat made during plea negotiation to reindict the defendant on more serious charges if he did not plead guilty to the original charge, there was no violation of due process. The court held that this was a give and take negotiation common in plea bargaining where *1068 the defendant and prosecutor arguably possess relatively equal bargaining power. "[I]n the 'give-and-take’ of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution’s offer.” (Bordenkircher v Hayes, supra, p 363.)
It is apparent from Bordenkircher that if the defendant had a choice of whether or not to accept the prosecutor’s offer, the court will be loathe to find coercion on the prosecutor’s part. Absent coercion, there is nothing unconstitutional about a defendant surrendering a statutory right during the stage of plea bargaining. While confronting a defendant with the risk of more severe punishment clearly may have "a discouraging effect on the defendant’s assertion of his trial rights, the imposition of these difficult choices [is] an inevitable [and permissible] attribute of any legitimate system which tolerates and encourages the negotiation of pleas.” (Chaffin v Stynchcombe, 412 US 17, 31.) Moreover, a constitutional rule that would prohibit a prosecutor from acting forthrightly in his dealings with the defendant could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged. (Blackledge v Allison, 431 US 63, 76.) Furthermore, the United States Supreme Court has held that if the system is to work effectively, prosecutors must be accorded the widest discretion, within constitutional limits, in conducting plea bargaining. Only in the most exceptional case should a court conclude that the scales of the bargaining are so unevenly balanced as to arouse suspicion. (Chaffin v Stynchcombe, supra.)
12. Another factor that a court will consider when deciding if a waiver is valid is termed "prosecutorial vindictiveness”. In Chaffin v Stynchcombe (supra) the Supreme Court held that prosecutorial vindictiveness is a fact against which the due process clause ought to protect. In Blackledge v Perry (417 US 21) the Supreme Court extended the rule laid down in North Carolina v Pearce (395 US 711) to protect the accused against the apprehension of prosecutorial vindictiveness. Pearce and Blackledge established that when the prosecutor had occasion to reindict the accused because the accused had exercised some procedural right, the prosecution bears a heavy burden of proving that any increase in the severity of the alleged charges was not motivated by a vindictive motive. It is apparent that the court will take a dim view of allowing the *1069 prosecutor to increase the severity of the punishment. But this does not pertain to plea bargaining. The court has consistently reaffirmed the right of the prosecutor to bring a heavier charge in the event the accused reneges on his plea bargain. (United States v Ruesga-Martinez, 534 F2d 1367.)
13. In United States ex rel. Brown v La Vallee (424 F2d 457) the court held that a State’s offer of a plea bargain was not a coercive intrusion on defendant’s deliberation concerning whether he should plead guilty or not. The court stated (supra, p 460) that a waiver of various rights inherent in plea bargaining is proper and not unconstitutional. Plea arrangements are of great advantage to defendants as well as to the People; without them the administration of criminal justice as we know it would be impossible.
Indeed, if a defendant waives a statutory right during the course of plea bargaining and such waiver is voluntary and intelligently made without any indicia of coercion or prosecutorial vindictiveness, said waiver is valid.
CONCLUSION
1. In the instant case, part of the waiver in issue was executed by the defendant, by his attorney Harris L. Kimball, and sworn to before that same attorney acting as a notary public on June 17, 1979. Likewise, part two of the waiver was also executed by this defendant, by the same attorney, and again notarized by the latter. There can be no claim here that these agreements were not knowingly, voluntarily, and intelligently entered into in the presence of and with the benefit of counsel.
2. In consonance with our decision, "the totality of circumstances” here present, inclusive of but not limited to the age, intelligence, experience, education and ability to comprehend the meaning and effect of the waiver documents on the part of both the competent defendant and his competent attorney, have all been considered. This is not a case of an innocent person being confused, coerced into pleading, or forced into acceptance of the ACD. We are convinced that the strength of the prosecution’s case, and the sentence exposure that defendant would have faced if convicted after trial, were factors which created the pressure, if any, for defendant’s signature on the waivers and not any impermissible conduct by the prosecutor. The defendant and counsel both believed it to be in their best interests to proceed as they did and to abandon *1070 the right to trial. The entire transaction represented an enlightened process and there can be no doubt whatsoever that they fully understood all the consequences of their actions. Neither of them will be allowed to breach the bargain and agreement to which they were both parties.